FIRST NATIONAL BANK OF STURGIS *v.* BENNETT.

The First National Bank of Sturgis v. Eli G. Bennett and others.

*Banks: President: Agency: Authority.*   It is doubtful whether a genera authority in the president of a bank to make discounts could empower him to make an arrangement under which the bank would surrender securities on receiving others which it was at. the same time agreed should be mere nullities so far as the sureties were concerned.

*Guaranty: Bank president: Agency: Individual contract.*   A guaranty against loss or liability for signing as sureties, given by a bank president in his own name and without authority from the directors, to those whom he had solicited thus to sign a note given to the bank to retire a prior note held by it against their principal, is held to be the individual contract of the president, and not binding upon the bank.

*Guaranty: Banks: Sureties: General banking law.*   Such a guaranty, if made by the bank and binding upon it, would be a bar to any suit by the bank against the sureties; and it is doubtful whether under the general banking law a national bank could give such a guaranty in a case where the effect would be to make the paper discounted the paper of one party only, secured by mortgage on real estate.

*Guaranty: Statute of frauds: Written instrument: Parol evidence.*   A guaranty to sureties against loss or liability is within the statute of frauds as an undertaking to answer for the debt or default of another; and when made in writing in the name of one party and purporting on its face to bind no other, can no more be shown by parol to be in fact the undertaking of a different party, than could such a liability be originally created by parol.

*Heard April 5.     Decided April 18.*

Case made from Branch Circuit.

*Upson & Thompson,* for plaintiff, as to the lack of authority in the bank under the statute to make the contract asserted by defendants, cited: *Kansas Valley National Bank v. Milo,* 2 Dill., *371; Bank v. Lanier,* 11 Wall., *369; Fowler v. Scully,* 72 Penn. St., *456;* and that the lawful powers of the bank and the authority of its officers were matters of law of which all persons dealing with the bank were bound to take notice, and of which · they could not plead ignorance: *Ang. & A. on Corp.,* § *299; 1. Doug.,* 457; *Wyman v. Hallowel, etc., Bank,* 14 *Mass., 61; Salem Bank v. Gloucester Bank,* 27 *Mass., 29.*

An agreement by the president and cashier of a bank, that an indorser shall not be liable on his indorsement, is not binding on the bank. It is not within the scope of their duties, and they cannot bind their principal except in the discharge of their ordinary duties: *Ang. & A. on Corp.*, §§ *298, 301, 309; Story on Agency*, § *115; Morse on Banking, 134; Parsons' Merc. Law, 140, note 1; Bank v. Dunn, 6 Pet., 51; Bank v. Jones, 8 Pet., 16; Miner v. Bank, 1 Pet., 70; Hodge v. Bank, 22 Gratt., 51; Harrisburg Bank v. Tyler, 3 W. & S., 376; Merchants' Bank v. Marine Bank, 3 Gill., 96; Crump v. U. S. Mining Co., 7 Gratt., 352; Booth v. Bank, 4 Lans., 301.*

Oral evidence not admissible to vary a written contract by showing that what purports to be the individual guaranty of the president of the bank was in fact the contract of the bank: *Hiatt v. Simpson, 8 Ind., 256.*

*John B. Shipman* and *H. H. Riley*, for defendants, argued that it was immaterial whether the guaranty in question was in the name of the bank or in the president's official or individual name; the parties dealing with the officer, supposing it is the bank they are dealing with, and the bank receiving the benefit of the transaction, it becomes the act of the bank; and these facts may be shown by parol: *Tremont Bank v. Paine, 28 Vt., 24; Sterling v. Marietta, etc., 11 S. & R., 179; Terrell v. Branch Bank, 12 Ala., 502; Coleman v. First Natl. Bank, 53 N. Y., 388; Van Lauran v. Bank, 6 Lans., 373; Morse on Banking, 130–1;* and the bank by their silence ratified the transaction afterwards; see *Morse on Banking, 107; United Society, etc., v. Underwood, 9 Bush, 609; 15 Am., 731; Pahquiogne Bank v. Bethel Bank, 36 Conn., 325; 4 Am., 80.*

The guaranty and note being executed at the same time, and relating to the same subject matter, constitute

but one transaction, and are to be read as one contract: *Benson v. Green, Walk. Ch.*, *56; Norris v. Hill, 1 Mich., 202; Dudgeon v. Haggart, 17 Mich., 275; Johnson v. Moore, 28 Mich., 3.*

If the guaranty be *ultra vires*, then, being a material part of the consideration to the sureties for their signatures, if it be illegal or void, the whole contract falls: *1 Pars. Cont. (5th ed.), 455–9; De Banski v. Page, 36 N. Y., 537.*

The bank having seen fit to appropriate part of this transaction and to sue upon it, with full knowledge of all the circumstances, thereby ratified the whole: *Curtis v. Leavitt, 15 N. Y., 9; 6 Paige, 497; Robinson v. Bealle, 20 Ga., 275; Morse on Banking, 106–8.*

One claiming the benefit of a contract made by an agent, any part of which is in excess of his authority, takes it *cum onere*, and is estopped from questioning the authority of the agent in any part of the transaction: *1 Pars. Cont., 44–7, 117; Big. on Estoppel, 584; Story on Agency, 239–60; Hovey v. Peck, 7 East, 164; Coleman v. Stark, 1 Ore., 115; Williamson v. Canady, 3 Ired., 349; Bennett v. Judson, 21 N. Y., 238; Elwell v. Chamberlain, 31 N. Y., 611; Craus v. Hunter, 28 N. Y., 389; Barber v. Brittan, 26 Vt., 112; Mundorf v. Wickersham, 63 Penn. St., 87; 3 Am., 531.*

COOLEY, CH. J:

This action is brought upon a promissory note for five thousand dollars, given to the plaintiff by the defendant Bennett as principal, and the defendants Buck and Newhall as sureties, bearing date November 16th, 1867, and payable in ninety days from that date. The amount of the note was applied, in the main, to the taking up of a previous note held by the plaintiff against Bennett, on which other parties were sureties.

The defense is based upon transactions which occurred contemporaneous with the giving of the note sued upon. It appears that Richard Reed was at that time president of the bank, and was very desirous of accommodating Bennett with a discount, for reasons which are not explained: he therefore undertook to procure sureties for Bennett, and personally solicited Buck and Newhall to become such sureties. They at first declined, but Reed took from Bennett a note of five thousand dollars to himself, with a mortgage on real estate collateral thereto, the sum being nominally payable in six months, and considering this a sufficient indemnity, executed and delivered to Buck the following paper:

"Sturgis, November 18th, 1867. For value received, I hereby guaranty Benjamin C. Buck against all loss or liability by reason of signing a note with E. G. Bennett for five thousand dollars, discounted at the First National Bank of Sturgis, dated November 16th, 1867, and due ninety days from date. Richard Reed."

He also executed and delivered a paper of corresponding import to Newhall.

The mortgage which Reed took was subsequently foreclosed in his name, but nothing has as yet been realized upon it. Buck and Newhall defend this suit on the claim that the guaranty given to them respectively, is really the guaranty of the bank, and therefore constitutes a legal bar to any claim against them on the note.

The defense is sought to be made out on the testimony of Reed. It is not claimed that the directors of the bank ever authorized him to give any guaranty on behalf of the bank, or that they were privy to or cognizant of Reed's negotiations on behalf of Bennett. The defense rely upon the fact, which was very clearly established, that Reed at the time had general charge of all discounts by the bank, and in respect to them was allowed to exercise all the powers of the board of directors.

It is a serious question whether a general authority in the president of a bank to make discounts, could empower

him to make an arrangement under which the bank would surrender securities on receiving others, which it was at the same time agreed should be mere nullities so far as the sureties were concerned. But this would be the effect of the arrangement now under consideration, if the guaranty made by Reed can be treated as the guaranty of the bank. The circuit judge was quite right in holding that such a guaranty, if made by the bank and binding upon it, would be a bar to any suit by the bank against the sureties. It would also be a serious question whether, under the general banking law, the bank itself could give such a guaranty, when the effect would be to make the paper discounted the paper of one party only, secured by mortgages on real estate.

But we think these questions not involved in the present case. The guaranties given by Reed to Buck and Newhall were on their face his own guaranties, and did not purport to bind the bank in any manner. They were also undertakings to answer for the debt or default of another, and were therefore directly within the statute of frauds, and would have been invalid if not in writing.

They could only be made the undertakings of the bank by the parol evidence of Reed as to his understanding and purpose to bind the bank by giving them. But when that understanding and purpose are proved, the whole arrangement, so far as the bank is concerned, is left to rest in parol, and the bank, if charged at all, is made liable on a contract that on its face is plainly and professedly the contract of Reed alone. This is not only directly in the face of the statute of frauds, but it is difficult to conceive of a case in which the reasons for the enactment of the statute could apply with more force. The arrangement, as it appears on its face, was valid in all its parts; the bank could enforce the note against all the parties to it, and the sureties could enforce the guaranty against Reed, who had solicited their signature to the note. But the arrangement, as Reed sets it up, defeats itself in the most important particular, by making the guaranty nullify the obligation of the

sureties. Now if Reed can shoulder his responsibilities upon the bank by the parol evidence which is to make the bank promise in his name, the statute is not only set aside, so far as it precludes one being charged by parol for the debt or default of another, but the written engagement of Reed, which is perfectly legal and valid on its face, and which, as a personal undertaking, is entirely consistent with the circumstances, is at the same time remodeled by releasing the ostensible party and charging another who by the writing does not appear to have any connection with it.

It is very manifest, we think, that the court erred in admitting the parol evidence to charge the bank on Reed's guaranties. The judgment must consequently be reversed.

As this is a case made, and the facts are all found which show the liability of the defendants, judgment will be entered against them on the finding for the amount of the note, with costs of both courts.

The other Justices concurred.